## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROY PARKER**                                    **CIVIL ACTION**

**VERSUS**                                        **NO.  15-65**

**BURL CAIN, WARDEN, LOUISIANA**                  **SECTION "G"(2)**
**STATE PENITENTIARY**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the submissions to date, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL BACKGROUND

The petitioner, Roy Parker, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Parker was indicted on June 18, 2009, by a grand jury in Orleans Parish for the second degree murder of his wife, Veronica Parker, and the attempted second degree murder of Brian Davis.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts determined at trial as follows:

> Roy Parker shot and killed his wife, Veronica, and shot and wounded her coworker, Brian Davis, on the morning of May 2, 2009. At the time of the shooting, Ms. Parker and Mr. Davis were with several coworkers who had gathered after work for drinks at the Erin Rose Bar, near the hotel where they worked. Ms. Parker sustained nine gunshot wounds. She died of massive internal bleeding from perforations to her aorta, lungs, liver, diaphragm, spleen, and stomach. Mr. Davis sustained gunshot wounds to his stomach and his legs.
>
> Carol Francis, Ms. Parker's mother, testified that at the time of the shooting, the defendant and her daughter were separated, and Ms. Parker was staying at Ms. Francis' apartment.
>
> The State played tapes of 911 calls concerning three incidents involving Ms. Parker and the defendant. The first, on December 14, 2008, involved a domestic disturbance at a residence on Behrman Highway where the defendant was reported to be pounding on the door. The second was of a domestic battery call on April 28, 2009, a few days before the shootings, also at the Erin Rose and also involving the Parkers. The third tape was calls concerning the shootings.
>
> [. . .]
>
> Brian Davis also worked with Ms. Parker.  He and other workers arrived at the bar between 1:00 and 2:00 a.m., and Ms. Parker arrived somewhat later. Ms. Parker indicated that she was going home with a female coworker who was present. He sat next to Ms. Parker at the bar and at one point closed his eyes and

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 6 of 10, Indictment, 6/18/09.

put his head down. He heard gunshots and screams and saw Ms. Parker fall to the floor. Then he was shot. He stated that he still had the bullets in his body. While at the hospital he learned of Ms. Parker's death from her wounds. Mr. Davis gave a statement to the police, and viewed a photographic lineup from which he chose the defendant's picture as that of the shooter. Mr. Davis denied that he and Ms. Parker were involved romantically; instead, he asserted that Ms. Parker "watched out" for him.

[. . .]

The defendant's video statement was played for the jury. He indicated therein that he believed his wife had been cheating on him for a long time, alleging that she had been consorting with owners of strip clubs in Atlanta and with men in New Orleans. He stated that he did not approve of her working nights and then spending time with coworkers at a bar instead of coming straight home. He alleged that his young daughter had told him that terrible things had happened to her while she was staying with other people when his wife was at work. He said he told his wife that she needed to get a nine-to-five job and come straight home to take care of the children. Although he maintained that he was a "stay-at-home" father, he indicated later in his statement that he worked as a barber.

The defendant stated that he had just been released from jail in connection with the "first lil [sic] argument ... altercation," presumably the April 28 incident. Neither his wife nor their children were at home when he got there. When he asked his wife's family where the children were, they told him that they did not know. He admitted knowing his wife had moved the children from the house when she learned that he had been released. He alleged that his young daughter told him that she had been harmed while staying with other people. He stated that he went to sleep, awakening around 3:30 a.m.; admitted being aware of the protective order that his wife had obtained against him, but he considered it to be like a divorce the court imposed which neither he nor his wife wanted; and, he wanted his wife to return to their home. He started going through his wife's possessions, and he noticed a pair of her underwear lying on the floor. He picked them up and noticed a substance on the underwear. He asserted that they had not had sex for two to three weeks, and he believed that the substance showed that she had had sex with some other man. He went through the rest of her clothing and found other underwear with what he thought was a substance on them. He stuffed them in his pocket and admitted grabbing his gun "just in ... I don't know what made me grab the gun. I know I shoulda [sic] never done it. ... But something just told me to take it."

The defendant testified that he went to visit his aunt, who had hidden the keys to his car because his driver's license had been suspended, and told her that he needed the keys to drive to the store. His aunt refused to give him the keys and

insisted upon driving him to the store.  Instead, he grabbed the keys from her, and she got into the back seat of the car. The defendant drove to the French Quarter to confront his wife and to try to reconcile with her. He parked the car, left the keys with his aunt and walked to the bar.  He saw his wife sitting there having fun with her coworkers, and then he did not know what came over him.  He described himself as being "numb," and he began shooting at her. He wished he had remained on the scene afterward to "comfort" her instead of running away. He began running to clear his head, and he found a place to hide for a while.  He paid someone to drive him to his cousin's house in New Orleans East but his cousin was not home. When the cousin returned, he told defendant he could not stay there and convinced defendant to surrender. His cousin drove him to the police station.

The defendant repeated that he went to the bar only to try to reconcile with his wife and bring her home. He reiterated that she left the house with the children for months, and he was too weak to be patient with what he called her "flaws." He stated that something came over him while he was standing outside the bar: "Like a [sic] evil spirit my whole body went numb. It was like I didn't even do it. I swear it was like it wasn't even me that was doing it." He stated that he and his wife had been married for over two years, had been together for over six years, and he considered her to be his best friend. He stated that he was prepared to deal with the consequences of the shooting, but: "Thing got out of hand but it ... it wasn't my fault, like I say ... I believe I was provoked" by many things, including what he termed her "playing with" his head, smiling with men, and coming home late. He had warned his wife that her job and her hanging out in the bar with her coworkers after work would ruin their marriage.

When the officers asked the defendant why he had grabbed the gun before leaving the house, he replied that he did not think that she would be at the bar, imagining that she would have the "sense" to be home with their children. He reiterated that he did not know why he grabbed the gun, noting that he usually did not carry the gun because he got stopped a lot by the police. He admitted that he could not stay away from his wife and described his actions as if he "was on a mission."

State v. Parker, 76 So.3d 55, 57-61 (La. App. 4th Cir. 2011); State Record Volume 9 of 10, Louisiana Fourth Circuit Opinion, 2010-KA-1277, pp. 1-9, September 21, 2011.

Although Parker initially entered a not guilty plea, he pled not guilty and not guilty by reason of insanity on February 5, 2010.[4]  The trial court scheduled a competency hearing for March 30, 2010.[5]  On April 6, 2010, however, the plea was amended from not guilty and not guilty by reason of insanity back to a not guilty plea.[6]

Jury trial proceeded on April 6 - 8, 2010, and Parker was found guilty as charged on both counts.[7]  The state trial court sentenced Parker on May 28, 2010, to life in prison for second degree murder and fifty (50) years in prison for attempted second degree murder, with the sentences to run concurrently and without benefit of parole, probation or suspension of sentence.[8]  The state trial court denied Parker's motions to reconsider the sentence, for new trial and for post-verdict judgment of acquittal on that same day.[9]

---

[4]St. Rec. Vol. 1 of 10, Docket Entry, 2/5/10.

[5]St. Rec. Vol. 1 of 10, Minute Entry, 3/29/10; Minute Entry, 6/25/09.

[6]St. Rec. Vol. 1 of 10, Minute Entry, 4/6/10.

[7]St. Rec. Vol. 1 of 10, Trial Minutes, 4/6/10; Trial Minutes, 4/7/10; Trial Minutes, 4/8/10; St. Rec. Vol. 9 of 10, Jury Verdict (count 1, 2 pages), 4/8/10; Jury Verdict (count 2, 2 pages), 4/8/10.

[8]St. Rec. Vol. 1 of 10, Sentencing Minutes, 5/28/10.

[9]St. Rec. Vol. 1 of 10, Hearing Minutes, 5/28/10; St. Rec. Vol. 3 of 10, Motion to Reconsider Sentence, 5/28/10; Trial Court Order, 5/28/10; Motion for New Trial, 5/27/10; Trial Court Order(2), 5/28/10; Motion for Post-Verdict Judgment of Acquittal, 5/27/10; Trial Court Order (3), 5/28/10.

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Parker's appointed counsel asserted two errors:[10] (1) The state trial court erred by limiting the scope of defense counsel's voir dire questions. (2) The state trial court erred by denying the defense's request for jury instructions on adultery and manslaughter. Parker filed a pro se supplemental brief urging three additional grounds:[11] (1) The evidence was insufficient to support the convictions. (2) The state trial court erred by denying the motions for new trial and post-verdict judgment of acquittal without stating its reasons. (3) An errors patent review would reveal other trial court errors.

The Louisiana Fourth Circuit affirmed the convictions and sentences on September 21, 2011, finding no errors patent and no merit in any of the asserted claims.[12] Represented by his current retained counsel, Parker sought review of that ruling in the Louisiana Supreme Court, but the court denied the writ application on March 9, 2012, without stated reasons.[13]

---

[10]St. Rec. Vol. 2 of 10, Appeal Brief, 2010-KA-1277, dated 2/28/11.

[11]St. Rec. Vol. 9 of 10, Pro Se Supplemental Brief, 2010-KA-1277, 8/22/11.

[12]Parker, 76 So.3d at 55; St. Rec. Vol. 9 of 10, 4th Cir. Opinion, 2010-KA-1277, 9/21/11.

[13]State v. Parker, 84 So.3d 551 (La. 2012); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2011-K-2339, 3/9/12; La. S. Ct. Writ Application, 11-K-2339, 10/21/11.

The conviction and sentence became final ninety (90) days later, on June 7, 2012, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

In the meantime, Parker signed and submitted his own pro se post-conviction writ application to the Louisiana Supreme Court on October 20, 2011, seeking review of the appellate court's decision.[14]  The court denied the writ application on July 27, 2012, without stated reasons.[15]

During the next two years, Parker's current retained counsel pursued post-conviction relief in the state courts.  While I have reviewed each of those pleadings, it is difficult to identify the particular arguments counsel asserted.  In the pleadings filed at each level of the state courts, Parker's counsel provided an odd narrative summary of the pretrial and trial proceedings written in the first person.  Scattered throughout these repetitious, stream of consciousness recitations, counsel asserted multiple references to alleged ineffective assistance of counsel at trial and on direct appeal.

_____

[14]St. Rec. Vol. 9 of 10, La. S. Ct. Writ Application, 11-KH-2478, 11/7/11 (postmarked 10/28/11, dated 10/20/11).

[15]State ex rel. Parker v. State, 93 So.3d 586 (La. 2012); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2011-KH-2478, 7/27/12.

The state trial court denied the initial application for post-conviction relief on April 18, 2013, finding the claims overly general, conclusory and without merit under the standards of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and related state law; specifically, for failure to show that counsel's performance fell below an objective standard of reasonableness or that, but for the alleged errors, the result of the proceedings would have been different.[16]

Parker's counsel sought review of this ruling in a writ application in the Louisiana Fourth Circuit, which asserted some new and similar (but not necessarily identical) claims of ineffective assistance of trial and appellate counsel, although this pleading is as convoluted and equally difficult to follow as the lower court submissions.[17]  The Louisiana Fourth Circuit denied relief on September 17, 2013, finding no error in the trial court's judgment.[18]

In a writ application subsequently filed with the Louisiana Supreme Court, Parker's counsel principally argued ineffective assistance of counsel claims, again

---

[16]St. Rec. Vol. 2 of 10, Trial Court Judgment, 4/18/13.

[17]St. Rec. Vol. 10 of 10, 4th Cir. Writ Application, 2013-K-0811, 6/11/13.  Counsel's writ application was untimely filed.  He was granted until June 10, 2013, to file the writ application, and it was not filed in the appellate court until June 11, 2013.  St. Rec. Vol. 2 of 10, Trial Court Order, 5/13/13; Request for Extension, 5/10/13; Trial Court Order, 5/8/10; Notice of Intent, 5/8/10.

[18]St. Rec. Vol. 10 of 10, 4th Cir. Order, 2013-K-0811, 9/17/13.

expanding the narrative presentation.[19]  The Louisiana Supreme Court denied the writ

application on October 10, 2014, without stated reasons.

## II.   FEDERAL HABEAS PETITION

On January 12, 2015, Parker's counsel filed a petition for federal habeas corpus

relief asserting four grounds for relief:[20]

(1)(a) ineffective assistance of counsel at trial; (b) Counsel learned of a conflict of interest during trial but continued to represent Parker after the trial court denied his requests to withdraw and for mistrial.

(2) ineffective assistance of counsel on direct appeal in failing to brief preserved objections to the following errors: (a) the state trial court did not appoint a sanity commission; (b) the state trial court denied the motion to continue trial; (c) withdrawal of the insanity plea; (d) the trial court denied the motion to withdraw and for mistrial after counsel announced his conflict of interest; (e) the trial court's refusal to grant a mistrial after Parker announced he had a problem with counsel's conflict; (f) Sixth Amendment Confrontation Clause violations; (g) a Sixth Amendment Confrontation Clause violation concerning the 911 tapes played and admitted at trial; (h) The trial court failed to administer the trial in accordance with law; (i) unlawful removal of a seated juror; (j) improper and inflammatory closing argument - call for plebiscite; (k) illegal sentences; (l) sufficiency of the evidence; (m) cumulative errors render the verdicts a Due Process violation; (n) Louisiana's 10-2 natural life imprisonment statute is unconstitutional.

(3)  Violation of Due Process - district attorney in rebuttal argument called for "pleblicite [sic] on domestic violence."[21]

(4)  Due process violation - removal of a juror over defense objection.

---

[19]St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 13-KP-2458, pp. i, 15, 17, 23, 10/17/13.

[20]Rec. Doc. No. 1, pp. 6, 8, 9, 11.

[21]Rec. Doc. No. 1, p. 9.

As to the ineffective assistance of trial counsel claims, Parker's counsel generally refers this court to his rambling, convoluted and disorganized memorandum in support of the petition to hunt for the alleged errors by trial counsel. I have been able to discern the following claims asserted in that horrendously written and extremely difficult to follow pleading: (a) Counsel allowed the trial court to proceed without appointment of a sanity commission, failed to pursue the competency defense asserted by Parker's original appointed trial counsel and convinced Parker on the morning of trial to withdraw the insanity plea because counsel was unprepared for trial. (b) Counsel was not prepared for trial. (c) Counsel did not advise the trial court in the motion to continue trial about their heavy caseload and insufficient time to prepare. (d) Counsel abandoned voir dire because they were too inexperienced to proceed without raising objections. (e) Counsel rested the defense case without calling witnesses and without allowing Parker to testify on his own behalf, because they did not have time to prepare Parker or any defense witnesses.

The State filed an answer in opposition to Parker's petition, conceding that the petition was timely filed.[22] The State argues, however, that Parker failed to exhaust state court remedies as to each argument and is now procedurally prohibited under state law

---

[22]Rec. Doc. No. 15.

from returning to the state courts for further review.  The State urges this court to dismiss Parker's claims with prejudice under the doctrine of technical procedural default.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Parker's petition filed by counsel on January 12, 2015.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has urged failure to exhaust and technical procedural default as a basis for this court to dismiss Parker's federal petition.  The State accurately describes the state court post-conviction pleadings as "disorganized, rambling, and often repetitive," making

---

[23]The AEDPA, which was signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

it "difficult to pinpoint" exactly which claims have been exhausted.[24]  Pleadings filed by counsel are <u>not</u> entitled to the liberal construction afforded pro se filings and instead stand on the arguments set forth by counsel.  Parker's state court post-conviction pleadings, all filed by current counsel, are in fact difficult to fathom.  It may well be that Parker has not exhausted state court remedies as to each aspect of his ineffective assistance of trial and appellate counsel claims, but any such conclusion cannot be made with confidence, given the confusing morass presented by the state court pleadings submitted by defense counsel.  However, I find that because the four arguments asserted in this court are clearly without merit, it is unnecessary to address exhaustion.  28 U.S.C. § 2254(b)(2).

IV.    <u>STANDARDS OF A MERITS REVIEW</u>

A.    <u>CLAIMS ADDRESSED ON THE MERITS IN STATE COURT</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the

---

[24]Rec. Doc. No. 15, p. 16.

State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

13

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner

to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

B.      CLAIMS NOT ADDRESSED ON THE MERITS IN THE STATE COURTS

The AEDPA's deferential standard of review under Section 2254(d) and Williams, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts.  28 U.S.C. § 2254(d).  As mentioned above, it may well be that Parker did not exhaust or fully adjudicate his claims in the Louisiana state courts.  With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply.  Cullen v. Pinholster, 563 U.S. 170, __, 131 S. Ct. 1388, 1401 (2011); Henderson v. Cockrell, 333 F.3d 592, 597 (5th Cir. 2003).  Instead, the federal courts review those claims under pre-AEDPA de novo standards of review.  Id. at 598 (citing Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009).  Thus, I will also consider Parker's claims de novo when necessary.

V.    ANALYSIS

A.    ASSISTANCE OF COUNSEL (CLAIMS NOS. 1 & 2)

As outlined above, Parker has asserted numerous grounds for his claims of ineffective assistance of counsel at trial and on direct appeal.  When his claims, similar to the ones here, were presented to the state courts, they were denied for failure to meet the standards set forth in Strickland.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Before considering the arguments asserted in this court, I first find that several arguments in Parker's discussion under the general rubric of ineffective assistance of trial counsel claims fail altogether to address any action or inaction attributable to counsel. Instead, they focus on actions of the state trial court and the prosecutor which are not the performance of counsel.  In other words, Parker fails to state a cognizable challenge to counsel's performance when he complains that the state trial court overruled counsel's various objections, removed a juror, or denied a request for a jury instruction on adultery. These arguments scattered through counsel's rambling and convoluted supporting memorandum wholly fail to address any action or deficient performance on the part of

counsel and cannot conceivably support the ineffective assistance claims asserted in this court.

A claim of ineffective assistance of counsel presents a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, when the AEDPA standards of review apply, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d

at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, under the AEDPA, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen, 131 S. Ct. at 1403 (quoting Knowles, 556 U.S. at 123). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

In this case, my review of Parker's conclusory arguments do not state any deficient or prejudicial performance by his counsel. The fact that the defense was not successful,

i.e. that Parker was convicted, does not mean that counsel's actions leading to the conviction were deficient. See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted). Parker has provided no bases for this court to question his counsel's performance at trial or on direct appeal or that undermine the deference due his counsel's trial decisions and choice of appellate arguments. Parker's claims of ineffective assistance of counsel are meritless under Strickland.

1.     TRIAL COUNSEL

a.     INSANITY PLEA AND DEFENSE

Parker argues that his trial counsel was ineffective when he allowed the trial court to proceed with the case without appointment of a sanity commission, failed to pursue the insanity defense raised by Parker's prior counsel and advised Parker to withdraw the insanity plea on the morning of trial.

As outlined above, although Parker initially entered a not guilty plea, he pled not guilty and not guilty by reason of insanity on February 5, 2010, while represented by his

first appointed counsel.[25]    Apparently based on that plea, the trial court scheduled a competency hearing for March 30, 2010.[26]  The proceedings that day were converted to a status hearing, and the matter was considered satisfied.[27]  Just before trial, on April 6, 2010, Parker withdrew the insanity plea and entered a not guilty plea.[28]

As to the affirmative defense of insanity, the factfinder is required to determine whether, at the time of the offense, the defendant was incapable of appreciating the nature and wrongfulness of his conduct.  United States v. Levine, 80 F.3d 129 (5th Cir.), cert. denied, 519 U.S. 824 (1996); La. Rev. Stat. § 14:14.  Parker, however, has not identified any basis for his attorneys to have pursued an insanity defense.

In Louisiana, a legal presumption exists that a defendant is sane at the time of the offense.  La. Rev. Stat. § 15:432.  To rebut the presumption of sanity and avoid criminal responsibility, a defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence.  La. Code Crim. P. art. 652.  The defense of insanity is defined by La. Rev. Stat. § 14:14:

---

[25]St. Rec. Vol. 1 of 10, Docket Entry, 2/5/10.

[26]St. Rec. Vol. 1 of 10, Minute Entry, 3/29/10; Minute Entry, 6/25/09.

[27]St. Rec. Vol. 1 of 10, Docket Entry, 3/30/10; St. Rec. Vol. 6 of 10, Minute Entry, 3/30/10. There is no transcript of the status hearing.  Although not noted in the state trial court minutes, Parker indicates that he was interviewed by a court-appointed psychiatrist in the jury room prior to trial.  Rec. Doc. No. 1-2, p.6 n.3.

[28]St. Rec. Vol. 1 of 10, Minute Entry, 4/6/10.  There is no transcript of the plea.

If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.

Under Louisiana law, "[c]riminal responsibility is not negated merely by the existence of a mental disease or defect . . .." State v. Williams, 346 So.2d 181, 186 (La. 1977). A mental disease or disorder short of legal insanity is insufficient to support an insanity defense. Id.; State v. Koon, 704 So.2d 756, 768 (La. 1997); State v. Weber, 364 So.2d 952, 956 (La. 1978). In addition, evidence of anger and emotional provocation are not admissible to establish insanity in Louisiana. See State v. Pitre, 901 So.2d 428, 444 (La. App. 1st Cir. 2004) ("Moreover, evidence of a mental disease or defect affecting defendant at the time of an offense is inadmissible, whether it is an organically caused mental condition or a psychologically or emotionally induced mental condition.")

In this case, Parker admitted in his recorded statement to police, which was played at trial, that he was "on a mission" when he grabbed a gun and made a plan to get to the bar to seek out his wife.[29] He admitted that he formed a plan to swipe his aunt's keys, take her car and drive to the bar to confront his wife. He stated that he knew he should not have grabbed his gun or shoot his wife. He stated that he was provoked by her presence at the bar and her prior actions, so he shot her.

_____

[29] Parker, 76 So.3d at 60-61.

These are not the words of a person who was incapable of appreciating the nature and wrongfulness of his conduct. Parker was admittedly angry, but that was not sufficient to support an insanity defense in Louisiana. Parker has not established a reasonable basis on which his trial counsel might have pursued an insanity defense or appointment of a sanity commission.

Counsel's decision not pursue a baseless insanity defense, or request appointment of a sanity panel, was more than reasonable, given the evidence of Parker's state of mind in the state court record. "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." United States v. Cronic, 466 U.S. 648, 656 n.19 (1984). "If the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." Jones, 163 F.3d at 304 (quoting Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir.1989)). Such is Parker's case.

Parker has failed to establish deficient performance or prejudice resulting from counsel's decision not to proceed with or pursue an insanity defense. He has failed to meet either prong of the Strickland standard. Thus, any denial of relief by the state courts

on these arguments was not contrary to or an unreasonable application of <u>Strickland</u> and its progeny.

b.   PREPARATION   FOR   TRIAL   AND   PRESENTATION   OF   DEFENSE
WITNESSES

Parker alleges without detail or supporting evidence that his counsel was unprepared for trial.  He complains that, as a result of his counsel's unpreparedness, the defense case rested without calling witnesses and without preparing or allowing Parker to testify on his own behalf.

To support his arguments, Parker asserts that, because his counsel were indigent defenders, they presumably were overworked with insufficient time and resources to defend the case.  Parker has offered absolutely no proof to support his assumptions and arguments regarding <u>his</u> counsel's workload and resources.  He instead points to aged commentary reflecting problems in the indigent defender program many years ago.  His burden under <u>Strickland</u> requires that he show by the performance of counsel in <u>his</u> case that <u>his</u> counsel in <u>his</u> case acted deficiently or prejudicially, which he has failed to do.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege <u>with specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) <u>Moawad v. Anderson</u>, 143 F.3d 942, 948 (5th Cir. 1998).  A petitioner cannot show prejudice with

respect to a claim that counsel failed to prepare and investigate without adducing what the investigation would have shown. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Rather, to prevail on a such claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. See Moawad, 143 F.3d at 948; see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In this case, Parker merely speculates that his counsel was unprepared and did not adequately investigate the case or interview defense witnesses. His claims are wholly conclusory. Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Parker has not specified what, if anything, further preparation or investigation would have provided his counsel or what exculpatory information was available that was not discovered by counsel's investigation. This is not sufficient to establish a deficiency in counsel's performance. Moawad, 143 F.3d at 948.

It is not enough for Parker to allege that his counsel should have called defense witnesses. "'Failure to present [evidence does] not constitute 'deficient' performance

within the meaning of <u>Strickland</u> if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" <u>Williams v. Cockrell</u>, 31 F. App'x 832 (5th Cir. 2002) (<u>quoting</u> <u>Williams v. Cain</u>, 125 F.3d 269, 278 (5th Cir. 1997)). Moreover, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir. 2003) (<u>quoting</u> <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)). Parker has not identified any potential witnesses who could have provided relevant testimony to support any defense.

As for Parker's own testimony, his claim is similarly conclusory and unsupported and fails to demonstrate either that he wanted to testify or that his counsel actually prevented him from doing so. It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. <u>Rock v. Arkansas</u>, 483 U.S. 44, 49 (1987); <u>Bower v. Quarterman</u>, 497 F.3d 459, 473 (5th Cir. 2007); <u>Sayre v. Anderson</u>, 238 F.3d 631, 634 (5th Cir. 2001); <u>Jordan v. Hargett</u>, 34 F.3d 310, 312 (5th Cir.1994). When, as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the United States Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of

counsel.'"  <u>Sayre</u>, 238 F.3d at 634 (quoting <u>United States v. Brown</u>, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary.  <u>Bower</u>, 497 F.3d at 473 (citing <u>Emery v. Johnson</u>, 139 F.3d 191, 198 (5th Cir. 1997)).  A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'"  <u>Emery</u>, 139 F.3d at 198 (quoting <u>United States v. Teague</u>, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right.  "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand."  <u>Turcios v. Dretke</u>, No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing <u>Underwood v. Clark</u>, 939 F.2d 473, 475-76 (7th Cir. 1991)); <u>accord</u> <u>Jones v. Cain</u>, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); <u>Davis v. Quarterman</u>, No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).  The <u>Underwood</u> court specifically identified various problems that were bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof.  <u>Underwood</u>, 939 F.2d at 475-76.  Adopting the reasoning in <u>Siciliano</u>

v. Vose, 834 F.2d 29, 31 (1st Cir. 1987), the Underwood court recognized that such an

assertion, even if made under oath,

> is insufficient to require a hearing or other action on his claim that his right
> to testify in his own defense was denied him.  It just is too facile a tactic to
> be allowed to succeed.  Some greater particularity is necessary – and also
> we think some substantiation is necessary, such as an affidavit from the
> lawyer who allegedly forbade his client to testify – to give the claim
> sufficient credibility to warrant a further investment of judicial resources
> in determining the truth of the claim.

Underwood, 939 F.2d at 475-76; accord Gross v. Knight, 560 F.3d 668, 672 (7th Cir.),

cert. denied, 558 U.S. 950 (2009).

> Citing Underwood, the Fifth Circuit has
>
> observed that allowing a bare assertion of a right-to-testify violation to
> precipitate the further investment of judicial resources is problematic.  See
> [Underwood, 939 F.2d at 476] . . . (stating that a conclusory assertion by
> a defendant that his right to testify was denied him is insufficient to require
> a hearing because "[i]t just is too facile a tactic to be allowed to succeed").
> We agree that there is "a grave practical difficulty in establishing a
> mechanism that will protect a criminal defendant's personal right . . . to
> testify in his own behalf without rendering the criminal process
> unworkable."

United States v. Martinez, 181 F.3d 627, 628 (5th Cir. 1999) (quoting Underwood, 939

F.2d at 475).  "While the Fifth Circuit has adopted the general rule of law enunciated in

Underwood . . . , the Court has further opined that [summary] dismissal is inappropriate

unless the habeas petitioner has first been afforded the opportunity to amend his

pleadings to provide the evidence necessary to support his claim."  Savoy v. Cain, No.

28

06-1744, 2008 WL 276542, at *1 (W.D. La. Jan. 29, 2008) (citing <u>Martinez</u>, 181 F.3d at 629).

In the instant matter, Parker claims that he told his counsel that he wanted to testify to express his remorse and shock at what he had done.[30] He further claims that counsel advised against it because there was no time to prepare him to take the stand. Parker's allegation falls far short of establishing that counsel <u>prevented</u> him from testifying, only that he advised against it. Parker's argument, therefore, is in a similar posture as that invalidated and rejected in the <u>Underwood</u> case. There is nothing in this record sufficient to prove an actual violation of his right to testify.

Furthermore, Parker has not established that his counsel's advice that he not testify was unreasonable. Parker's proposed emotional plea to the jury, if allowed, would have had no bearing on the facts of the case or established a defense to the shooting, to which he had already admitted in his recorded statement played for the jury. Parker's admission of guilt was already before the jury with minimal discussion of his prior criminal acts, including the numerous acts of domestic violence against his wife. He does not indicate,

---

[30]Parker's counsel has had ample time and opportunity, both while his post-conviction proceedings were pending in the state courts and during the pendency of this federal habeas petition, to pursue or file evidence that would establish that counsel refused to let him testify. He has failed to do so, or even to suggest that it is conceivable that he could obtain such evidence. Under these circumstances, it appears that no further opportunity to obtain such evidence need be provided by this court, as suggested in the <u>Martinez</u> and <u>Savoy</u> decisions cited and discussed above. Parker is free to use the 14-day objection period following entry of this report and recommendation to file such evidence, if he has any, before his claim is dismissed with prejudice.

nor has he ever indicated, any proposed testimony that would have been beneficial to the defense.   He also would have been exposed to cross-examination by the prosecutor regarding his statement to police and other factors relevant to his guilt and character, including prior criminal convictions, which would have undermined his credibility.

Parker's trial counsel apparently determined that the prejudice posed by potential cross-examination outweighed any benefit Parker's live testimony might have provided his defense.  Parker has not demonstrated that the outcome of the trial would have been different, but for counsel's decision to rest the defense without his testimony.

For these reasons, Parker has not demonstrated any deficiency or prejudice resulting under the standards set forth in Strickland from counsel's decision not to call him to testify or that counsel's advice deprived him of his right to testify.  Parker is not entitled to relief on this claim.  Any denial of relief by the state courts on this or a related argument was not contrary to, or an unreasonable application of, Strickland.

c.   COUNSEL'S CASELOAD AND TIME FOR PREPARATION

Parker alleges that his counsel failed to advise the state trial court in the motion to continue trial about his heavy caseload and insufficient time to prepare for trial.  As noted above, Parker assumes that, because his attorneys were indigent defenders, they were overworked and had insufficient time and resources to defend the case.  Parker offers absolutely no proof to support this assumption as it pertains to his counsel.  In

addition, his counsel's choice of arguments to support the motion to continue falls squarely within the ambit of trial strategy.  See Taylor v. Maggio, 727 F.2d 341, 347-48 (5th Cir. 1984) ("the failure to present a particular argument or evidence is presumed to have been the result of strategic choice.")  Federal courts "will not question a counsel's reasonable strategic decisions."  Bower, 497 F.3d at 470.

For these reasons, Parker has not met the burden of establishing either prong under Strickland.  Any denial of relief by the state courts on this or a related issue was not contrary to or an unreasonable application of Strickland.  Parker is not entitled to relief on this argument.

d.    VOIR DIRE QUESTIONING

Although poorly stated, Parker appears to argue that his counsel was forced to abandon questioning during voir dire because they were "too inexperienced" to continue the questioning without provoking objections from the prosecutor.  Parker references two instances in which the state trial court granted objections by the State to questions posed by his counsel during voir dire.  Parker's arguments make assumptions that his counsel were inexperienced and could not restate the questions in a manner that would not draw an objection from the State.

The fact that the state trial court granted the State's objections does not mean that defense counsel was inexperienced or ineffective.  See Martinez, 99 F. App'x at 543.  In

31

addition, as noted by the Louisiana Fourth Circuit on direct appeal, there was no prejudice as a result of the sustained objections because both defense counsel and the State exercised the opportunity to discuss the elements of manslaughter and emotional tension on other occasions when no objections were raised.[31]  Parker's claim in this court also fails to consider the thoroughness and adequacy of his counsel's overall voir dire presentation.

The state court transcripts provided to this court indicate that Parker's trial counsel conducted full and relevant voir dire of the jury panels.  Parker has not provided a transcript or any evidence establishing that defense counsel was prevented from questioning of the "jury as a whole" about another domestic abuse case.  The transcripts provided by the State reflect that defense counsel in fact questioned the jury panels during voir dire about the other domestic abuse case, and no objections were lodged by the State during that examination.[32]  The record demonstrates that defense counsel was able effectively to question each panel of potential jurors about their knowledge of the other case and any concerns or impressions they might have regarding domestic violence.

---

[31]Parker, 76 So.3d at 61-64; St. Rec. Vol. 9 of 10, 4th Cir. Opinion, 2010-KA-1277, pp. 13-15, 9/21/11.

[32]St. Rec. Vol. 8 of 10, Partial Trial Transcript, pp. 49-51, 90, 94-96, 4/6&8/10.

32

Defense counsel also supplemented the State's discussion of the differences between second degree murder and manslaughter during voir dire of each panel.[33]  In doing so, defense counsel also questioned the potential jurors about their ability to distinguish acts resulting from emotions and anger. Only in the rehashing of the manslaughter concept during questioning of one panel did the State object to the semantics of defense counsel's suggestion that the potential jurors consider the shooting to have been manslaughter, rather than whether the jurors would consider that evidence in reaching their verdict.[34]  Counsel attempted to rephrase the point and the court again granted the State's objection.[35]  Defense counsel then noted her own objection to the ruling and ended her questioning, having already previously made the point.

The transcript makes clear that Parker's counsel was able thoroughly to question the jury panels and was not stymied in their questioning of potential jurors about the other domestic violence case or the alternate verdict of manslaughter.  Each topic was covered in detail by both attorneys during their respective presentations.  Parker's assertion that counsel was inexperienced or otherwise deficient in their presentation is conclusory and unsupported by the record.  Counsel's decisions regarding the choice of

---

[33]St. Rec. Vol. 8 of 10, Patrial Trial Transcript, pp. 37-42, 55-57, 91-92, 4/6&8/10.

[34]St. Rec. Vol. 8 of 10, Partial Trial Transcript, pp. 104-05, 4/6&8/10.

[35]St. Rec. Vol. 8 of 10, Partial Trial Transcript, pp. 105-06, 4/6&8/10.

voir dire questions and the scope and length of voir dire examination was well within the ambit of reasonable trial strategy for which counsel is entitled to deference.  See Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995) (An "attorney's actions during voir dire are considered to be a matter of trial strategy.").

Parker has not met the burden of establishing either prong under Strickland.  Any denial of relief by the state courts on this or a related issue was not contrary to or an unreasonable application of Strickland.  Parker is not entitled to relief on this claim.

e.    CONFLICT OF INTEREST

Parker asserts that his lead defense counsel learned of a conflict of interest during trial but continued to represent Parker after the trial court denied the requests to withdraw and for mistrial based on the conflict.  Parker alleges that his counsel received information via text message that his best friend was acquainted with the victim and several of the State's witnesses.  Counsel apparently disclosed this to the state trial court, but counsel's request to withdraw, Parker's request for new counsel and a related motion for mistrial were all denied by the court.[36]

The Supreme Court has held that prejudice is presumed when counsel is burdened by an actual conflict of interest.  Strickland, 466 U.S. at 692.  However, "[p]rejudice is

---

[36]Parker has not provided a transcript of this exchange and the record provided does not contain that portion of the trial transcript.

presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980)). Consequently, application of the actual conflict or presumed prejudice standard articulated in Cuyler is limited.

The Fifth Circuit has recognized that the Cuyler limitation applies to cases of "multiple representation" by counsel.  Beets v. Scott, 65 F.3d 1258, 1265-66 (5th Cir. 1999).  The Beets court explained that "Strickland offers a superior framework for addressing attorney conflicts outside the multiple or serial client context." Id. at 1265. The Fifth Circuit further elaborated that "[i]n stark contrast to multiple representation situations, there is little meaningful distinction between a lawyer who inadvertently fails to act and one who for selfish reasons decides not to act." Id. at 1271; Moreland v. Scott, 175 F.3d 347, 349 (5th Cir.1999).  Thus, "[u]nder Beets, cases in which it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed Strickland standard."  Moreland, 175 F.3d at 349 (citation omitted). Applying these standards, Parker has failed to identify any act adverse to the defense by his counsel related to the tenuous and tangential relationship, if any, between his counsel, the friend and the victims and witnesses.

35

Parker also claims that his counsel's performance after the conflict was announced was "spotty and lackluster at best."  As examples of this, Parker lists instances in which his counsel's objections were sustained by the state trial court and not followed with a motion for mistrial.  Parker absolutely fails to explain why a mistrial was required following a sustained objection.  If moving for mistrial were the norm of reasonable practice, no case could ever move forward past a sustained objection.

Parker also complains that his counsel did not object to the alleged hearsay testimony of Officer Reginald Rowe, who investigated the prior domestic violence incident, and Detective Rob Long, who investigated the shooting.  He offers no indication as to what specific testimony counsel should have objected or how counsel's decision not to object was deficient or prejudicial.

Parker's wholly conclusory and speculative arguments fail to meet either prong of the Strickland test.  Even if a conflict might conceivably have existed under these extremely distinct circumstances, the record contains no indication that it compromised the quality of defense counsel's representation.  Parker has failed to establish that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having a just result."  Strickland, 466 U.S. at 686.  He is not entitled to relief on this claim and the denial of such by the state courts was not contrary to or an unreasonable application of Strickland.

2.    <u>APPELLATE COUNSEL</u>

Parker argues that his appellate counsel was ineffective for not raising on appeal <u>all</u> of the errors preserved at trial.  Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985).  The <u>Strickland</u> standard for judging performance of counsel also applies to claims of ineffective appellate counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 170 (5th Cir. 1997).  To prevail on a claim that <u>appellate</u> counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  <u>Briseno v. Cockrell</u>, 274 F.3d 204, 207 (5th Cir. 2001); <u>Smith</u>, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal.  <u>Green</u>, 160 F.3d at 1043 (citing <u>Evitts</u>, 469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal.  <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983).  Appellate counsel has the discretion to exclude even a

nonfrivolous issue if that issue was unlikely to prevail.  See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit.  As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).  Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue.  Smith, 528 U.S. at 288;  Jones, 463 U.S. at 754.

In the instant case, Parker lists without discussion or explanation the following alleged trial errors which should have been raised on direct appeal: (a) the state trial court did not appoint a sanity commission; (b) the state trial court denied the motion to continue trial; (c) withdrawal of the insanity plea under the circumstances of the case; (d) the trial court denied the motion to withdraw and for mistrial after counsel announced his conflict of interest; (e) the trial court's refusal to grant a mistrial after Parker announced he had a problem with counsel's conflict; (f) Sixth Amendment Confrontation

Clause violations; (g) a Sixth Amendment Confrontation Clause violation when the 911 tapes were played and admitted at trial; (h) the trial court failed to administer the trial in accordance with law; (i) unlawful removal of a seated juror; (j) improper and inflammatory closing argument - call for plebiscite; (k) illegal sentences; (l) sufficiency of the evidence; (m) cumulative errors rendering the verdict a due process violation; (n) Louisiana's 10-2 natural life imprisonment statute is unconstitutional.

As noted above, Parker offers no discussion of or explanation concerning the alleged validity of these claims. His arguments are wholly conclusory and offer no basis to establish that a meritorious argument was overlooked by his appellate counsel. In fact, many of the issues were <u>not</u> preserved for appellate review by objection and do not demonstrate error by the state trial court.

As discussed above concerning the performance of trial counsel, the record does not demonstrate any reason for Parker's counsel or the state trial court to pursue the sanity defense based on the facts of this case. Parker has shown no reason for the state trial court to have replaced trial counsel based on the tenuous conflict disclosed by counsel which had no apparent impact on counsel's representation.

With respect to the sufficiency of the evidence claim, although it was not raised by counsel on appeal, it was raised by Parker himself and found to be meritless. Parker

cannot now show error on the part of counsel on appeal for failing to raise a meritless appellate argument.  Anderson, 204 F. App'x at 410; Penson, 488 U.S. at 83-84.

The remaining arguments listed by Parker are simply too conclusory to assess any potential merit that could have been argued to the state appellate court.  For instance, Parker has not addressed any particular Confrontation Clause issue that would have been meritorious in the presentation of testimony or evidence by the State.  The only particular reference made by Parker was to the playing and introduction of the 911 telephone calls, a claim that does not invoke Sixth Amendment protections for the following reasons.

The Confrontation Clause prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  Crawford v. Washington, 541 U.S. 36, 53-54 (2004).  However, in Davis v. Washington, 547 U.S. 813, 822 (2006), specifically in the context of 911 calls, the Supreme Court declared that "[s]tatements are nontestimonial when made in the course of police investigation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."  Any challenge to the 911 tapes would have been meritless under prevailing law in Louisiana.  State v. Collins, 65 So.3d 271, 282-83 (La. App. 4th Cir. 2011).

Parker addressed the "unlawful removal of a seated juror" as his fourth issue in this federal petition, which I will discuss later in this report. He asserted the improper closing arguments of the prosecutor as his third claim in this federal petition, which also will be more fully addressed below. For the reasons discussed in the sections below, Parker has not established a meritorious claim under either theory that should have been raised by his counsel on appeal.

There was no legal basis for Parker's appellate counsel to have challenged Louisiana's non-unanimous verdict rule. The well established law, already relied upon by the state courts in pretrial proceedings, left no reason for Parker's appellate counsel to urge this meritless claim. In Apodaca v. Oregon, 406 U.S. 404 (1972), and Johnson v. Louisiana, 406 U.S. 356 (1972), the United States Supreme Court upheld the constitutionality of state laws – including Louisiana's – that permit criminal defendants to be convicted by less than unanimous votes. While the Supreme Court itself has recently described the Apodaca/Johnson holding as "the result of an unusual division among the Justices," it also made clear in the same breath that Apodaca/Johnson remains the law of the land: "The [Supreme] Court has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials." McDonald v. City of

Chicago, 561 U.S. 742, 766 n.14 (2010) (emphasis added).  Parker's counsel did not err in failing to urge a meritless challenge to Louisiana's non-unanimous verdict law.

For all of the foregoing reasons, Parker has failed to list or otherwise identify a claim that would likely have been meritorious on direct appeal.  He has failed to establish that his counsel on appeal provided ineffective assistance under the Strickland standards. He is not entitled to relief on this claim, nor was the denial of relief by the state courts contrary to or an unreasonable application of Strickland.

B.      STATE'S CLOSING ARGUMENT (CLAIM NO. 3)

Parker argues that the State violated his due process rights when it called for a "pleblicite [sic] on domestic violence"[37] during rebuttal argument.  Parker also alleges that the State "fabricated evidence" and "exploited the jury's passions" during the rebuttal argument.[38]

A prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant question is whether the prosecutors' comments so

_____

[37]Rec. Doc. No. 1, p. 9.

[38]Rec. Doc. No. 1-2, p.18.

infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations and quotations omitted); accord Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).

Courts in the Fifth Circuit must apply a two-step analysis when reviewing claims of prosecutorial misconduct. United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000); United States v. Lankford, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must determine whether the prosecutor made an improper remark. Wise, 221 F.3d at 152. "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant." Id. A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." Jones, 864 F.2d at 356; accord Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994). Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair," by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." Rogers, 848 F.2d at 609 (footnote and citations omitted).

43

For purposes of federal habeas review under the AEDPA, Parker's claim of prosecutorial misconduct presents a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989))

Parker focuses on particular language which he claims "highlight[ed] the plight of abused women"[39] when the prosecutor argued to the jury that manslaughter did not fit the circumstances of Parker's case. Parker specifically complains that the prosecutor described the victim as "a young woman who had fought for years now to get out from underneath his control,"[40] which he claims was an attempt to garner sympathy for abused women. As Parker readily admits, however, his counsel's objections to this argument and other portions of the argument, including the State's request that the jury "be her voice" for justice, were sustained by the state trial court.

The transcript of the closing and rebuttal arguments reflects that the State relied heavily on Parker's own statement to police to point out the instances and actions tending to show that he planned the shooting and had ample opportunity to "cool" his anger,

---

[39] Rec. Doc. No. 1-2, p. 19.

[40] St. Rec. Vol. 8 of 10, Partial Trial Transcript, p. 160, 4/6&8/10; Rec. Doc. No. 1-2, p. 19.

negating any reason for the jury to consider a manslaughter verdict. I cannot conclude that the few unfortunate comments by the prosecutor, as to which the state trial court sustained objections, so infected the trial as a whole that it was rendered fundamentally unfair. The prosecutor's comments were limited in number and were neither persistent nor pronounced.

When viewed as a whole, the record contains ample evidence apart from the prosecutor's remarks (properly controlled by sustained objections) upon which the jury was able to conclude that Parker was guilty of second degree murder, including his own admissions and recounting of the events that led to the shooting. In the overall context of this trial, it cannot be concluded that Parker's conviction would not have resulted, but for the prosecutor's comments during rebuttal argument.

Other courts have rejected similar claims and denied federal habeas relief when petitioners asserted comparable, or even arguably more egregious circumstances. Walker v. Quarterman, No. H-07-3108, 2009 WL 497155, at *20-21 (S.D. Tex. Feb. 26, 2009) (citing United States v. Hasting, 461 U.S. 499, 511-12 (1983); Cotton v. Cockrell, 343 F.3d 746, 752 (5th Cir. 2003). In United States v. Chase, 838 F.2d 743 (5th Cir. 1988), for example, petitioner argued that the prosecutor made "a grossly improper appeal to the jury's emotions and sympathy" when the prosecutor read to the jury during closing argument a poem written by the 14-year-old rape victim and "persuaded the jury to

convict on a moral and emotional basis rather than based on their consideration of the relevant evidence." Id. at 749-50. The court held that the prosecutor was responding to defense counsel's argument that no sexual assault had occurred, that the response was not misconduct in light of the overwhelming evidence of petitioner's guilt, and that petitioner "failed to show that the prosecutor's comments and reading of the Complainant's poem rendered his trial fundamentally unfair." Id.

Similarly, in Cockrell v. Cockrell, No. Civ. SA-99-CA-1119-FB, 2003 WL 1906163 (W.D. Tex. Mar. 31, 2003), the prosecutor argued in closing at a murder trial that the defendant has "brought you into this. Don't feel sorry for him. Feel bad about what you have to do. That is okay. But don't feel sorry for this killer and don't let the blood of that last victim be on your hands." Id. at *25 & n.181. The court held that the closing argument "did not 'so infect' the petitioner's trial with unfairness as to deny petitioner due process of law" because the court found "no authority holding that a prosecutor's colorful or hyperbolic pleas for law enforcement, which drew no objection at trial from defense counsel, mandate reversal of a conviction supported by overwhelming evidence." Id.

For these reasons, Parker has failed to establish that the State's rebuttal argument denied him due process or improperly impacted the verdict. He is not entitled to relief

on this claim.  Any denial of relief by the state courts on this ground was not contrary to or an unreasonable application of federal constitutional precedent.

## C.    REMOVAL OF SEATED JUROR (CLAIM NO. 4)

Parker also argues that his due process rights were violated when the state trial court removed a seated juror over defense objection.  He asserts that the sworn and accepted juror advised the trial court in an ex parte conversation that he remembered Parker from high school.  After an inquiry in chambers regarding the juror's ability to be fair and impartial, the court dismissed him from the jury.

Under La. Code Crim. P. art. 796, Louisiana law allows the state trial court to dismiss a sworn and accepted juror if it is discovered that the juror is incompetent to proceed, and this determination "is a matter subject to the discretion of the trial court." State v. Willis, 915 So.2d 365, 392 (La. App. 3d Cir. 2005) (citing State v. Fuller, 454 So.2d 119 (La. 1984)).  The state court's exercise of discretion as a matter of state law is not subject to this federal court's habeas review.  This federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle v. McGuire, 502

U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West v. Johnson, 92

F.3d 1385, 1404 (5th Cir. 1996)); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir.

1997) (a disagreement as to state law is not cognizable on federal habeas review).

Habeas corpus review is limited to questions of constitutional dimension, and federal

courts generally do not review questions of state law.  Estelle, 502 U.S. at 67-68;

Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292,

298 (5th Cir. 1992).

Considering the claim under federal law, Parker has not established a right to

relief.  The Sixth Amendment right to a fair trial guarantees an impartial jury.  Nebraska

Press Assoc. v. Stuart, 427 U.S. 539, 551 (1976).  The "right to an impartial adjudicator,

be it judge or jury," is among basic fair trial rights, violation of which "'can never be

treated as harmless.'"  Gray v. Mississippi, 481 U.S. 648, 668 (1987) (quoting Chapman

v. California, 386 U.S. 18, 23 (1967)).  However, the Supreme Court has "squarely held

that an impartial jury consists of nothing more than 'jurors who will conscientiously

apply the law and find the facts.'"  Lockhart v. McCree, 476 U.S. 162, 178 (1986)

(quoting Wainwright v. Witt, 469 U.S. 412, 423 (1985); see Smith v. Phillips, 455 U.S.

209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely

on the evidence before it"); Irvin v. Dowd, 366 U.S. 717, 722 (1961) ("In essence, the

right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors").

Parker does not allege that the jury which actually presided over his case was other than impartial or that the release of a single juror after the start of trial in any way affected the remaining jurors' fairness and impartiality. Ross v. Oklahoma, 487 U.S. 81, 88 (1988) ("So long as the jury that sits is impartial," the use of a peremptory challenge to achieve that goal does not violate the constitution).

Without this showing, Parker has not established a constitutional violation that would entitle him to federal habeas relief. Any denial of relief by the state courts on this ground was not contrary to or an unreasonable application of federal constitutional precedent.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Parker's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[41]

New Orleans, Louisiana, this ____13th____ day of November, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[41]Douglass referenced the previously applicable ten-day period for the filing of objections.
Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.