| ROY PARKER | CIVIL ACTION |
|---|---|
| VERSUS | NO. 15-65 |
| N. BURL CAIN, WARDEN | SECTION: "G"(2) |

## ORDER AND REASONS

Before the Court are Petitioner Roy Parker's ("Petitioner") objections[1] to the Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.[3] The Magistrate Judge recommended that the petition be dismissed on the merits.[4] Petitioner objects to the Magistrate Judge's recommendation.[5] After reviewing the petition, the State's response, the Magistrate Judge's Report and Recommendation, Petitioner's objections, the record, and the applicable law, the Court will overrule Petitioner's objections, adopt the Magistrate Judge's recommendation and dismiss this action with prejudice.

---

[1] Rec. Doc. 22.

[2] Rec. Doc. 19.

[3] Rec. Doc. 1.

[4] Rec. Doc. 19.

[5] Rec. Doc. 22.

# I. Background

### A.    Factual Background

On June 18, 2009, Petitioner was charged by Indictment in the Orleans Parish Criminal District Court with one count of second-degree murder of his wife, Veronica Parker, and one count of attempted second-degree murder of Brian Davis.[6] Petitioner initially entered a not guilty plea, but on February 5, 2010, he changed his plea to both not guilty and not guilty by reason of insanity.[7] On April 6, 2010, Petitioner changed his plea again to not guilty, withdrawing the plea of not guilty by reason of insanity.[8]

On April 8, 2010, following a jury trial, Petitioner was found guilty as charged.[9] On May 28, 2010, Petitioner was sentenced to life imprisonment on the second-degree murder conviction and 50 years imprisonment on the attempted second-degree murder conviction, with both sentences to run concurrently and without possibility of probation, parole, or suspension of sentence.[10] The same day, the state trial court denied Petitioner's motions to reconsider the sentence, for a new trial and for post-verdict judgment of acquittal.[11] The Louisiana Fourth Circuit Court of Appeal affirmed Petitioner's convictions and sentences on September 21, 2011.[12] The

---

[6] State Rec., Vol. VI of X, Indictment, June 18, 2009.

[7] State Rec., Vol. I of X, Docket Entry, Feb. 5, 2010.

[8] State Rec., Vol. VI of X, Docket Entry, Apr. 6, 2010.

[9] State Rec., Vol. IX of X, Jury Verdict, Apr. 8, 2010.

[10] State Rec., Vol. I of X, Minute Entry Sentencing, May 28, 2010.

[11] State Rec., Vol. I of X, Hearing Minutes, May 28, 2010.

[12] *State v. Parker*, 2010-KA-1277 (La. App. 4 Cir. 9/21/11); 76 So. 3d 55.

Louisiana Supreme Court denied Petitioner's application for a writ of certiorari on March 9, 2012.[13]

Petitioner, through retained counsel, subsequently filed an application for post-conviction relief in the state trial court, which was denied on April 18, 2013.[14] Petitioner's related writ applications were denied by the Louisiana Fourth Circuit Court of Appeal on September 17, 2013,[15] and by the Louisiana Supreme Court on October 10, 2014.[16]

On January 12, 2015, Petitioner filed this habeas petition raising the following grounds for relief: (1) ineffective assistance of counsel at trial; (2) ineffective assistance of appellate counsel; (3) a violation of due process by the prosecutor during rebuttal argument; and (4) a violation of due process when a juror was removed over an objection by the defense.[17] As part of his ineffective assistance of trial counsel claim, Petitioner argues: (1) counsel allowed the trial court to proceed without appointment of a sanity commission, failed to pursue the competency defense asserted by Petitioner's original appointed trial counsel and convinced Petitioner on the morning of trial to withdraw the insanity plea because counsel was unprepared for trial; (2) counsel was not prepared for trial and rested the defense case without calling witnesses and without allowing Petitioner to testify on his own behalf, because counsel did not have time to prepare Petitioner or any defense witnesses; (3) counsel did not advise the trial court in the motion to continue trial about their heavy caseload and insufficient time to prepare; (4) counsel abandoned voir dire because they were too

---

[13] *State v. Parker*, 2011-K-2339 (La. 3/9/12); 84 So. 3d 551. In the interim, Petitioner also filed a pro se post-conviction writ application before the Louisiana Supreme Court, which was denied on July 27, 2012. *See State ex rel. Parker v. State*, 2011-KH-2478 (La. 7/27/12); 93 So. 3d 586.

[14] State Rec., Vol. II of X, Order Denying Application for Post-Conviction Relief, Apr. 18, 2013.

[15] *State v. Parker*, 2013-K-811 (La. App. 4 Cir. 9/17/13); State Rec., Vol. X of X.

[16] *State v. Parker*, 2013-KP-2458 (La. 10/10/14); 150 So. 3d 891.

[17] Rec. Doc. 1.

inexperienced to proceed without raising objections by the prosecutor; and (5) counsel learned of a conflict of interest during trial but continued to represent Petitioner after the trial court denied counsel's request to withdraw and for mistrial.[18] As part of his ineffective assistance of appellate counsel claim, Petitioner argues that his appellate counsel failed to preserve objections to the following errors on direct appeal: (1) the state trial court did not appoint a sanity commission; (2) the state trial court denied the motion to continue trial; (3) trial counsel improperly withdrew the insanity plea; (4) the trial court denied the motion to withdraw and for mistrial after counsel announced his conflict of interest; (5) the trial court refused to grant a mistrial after Petitioner announced he had a problem with counsel's conflict; (6) there were Sixth Amendment Confrontation Clause violations at trial; (7) there was a Sixth Amendment Confrontation Clause violation when 911 tapes were played and admitted at trial; (8) the trial court failed to administer the trial in accordance with law; (9) the trial court unlawfully removed a seated juror; (10) the prosecutor made improper and inflammatory closing arguments; (11) Petitioner's sentences were illegal; (12) there was insufficient evidence to support the conviction; (13) cumulative errors rendered the verdicts a Due Process violation; and (14) Louisiana's non-unanimous verdict rule was unconstitutional.[19] The State filed a response, arguing that the petition should be dismissed as Petitioner failed to exhaust state court remedies as to each argument and is now procedurally prohibited under state law from returning to the state courts for further review.[20] Therefore, the

---

[18] Rec. Doc. 1-2 at 5–13, 16–17. *See also* Rec. Doc. 19 at 9–10. The Magistrate Judge discerned these claims from the petition, and Petitioner does not object to this categorization of the claims.

[19] Rec. Doc. 1-2 at 22–23.

[20] Rec. Doc. 15.

State contends that Petitioner's claims are procedurally defaulted and should be dismissed with prejudice.[21] Alternatively, the State argues that the claims should be dismissed on the merits.[22]

## B.     *Report and Recommendation Findings*

In the Report and Recommendation, the Magistrate Judge noted that the State could be correct in its assertion that Petitioner did not exhaust state court remedies as to each aspect of his ineffective assistance of trial and appellate counsel claims, but the Magistrate Judge determined that "any such conclusion cannot be made with confidence, given the confusing morass presented by the state court pleadings submitted by defense counsel."[23] Therefore, because the claims could be dismissed on the merits, the Magistrate Judge concluded that it was unnecessary to address the issue of exhaustion.[24] Accordingly, the Magistrate Judge proceeded to address the merits of Petitioner's claims, and recommended that the petition be dismissed on the merits.[25]

### 1.     Ineffective Assistance of Trial Counsel Claims

First, the Magistrate Judge examined Petitioner's claim that his trial counsel was ineffective when he allowed the trial court to proceed with the case without appointment of a sanity commission, failed to pursue the insanity defense raised by Petitioner's prior counsel, and advised Petitioner to withdraw the insanity plea on the morning of trial.[26] The Magistrate Judge noted that Petitioner had not identified any basis upon which his attorneys could have pursued an insanity

---

[21] *Id.*

[22] *Id.*

[23] Rec. Doc. 19 at 12.

[24] *Id.* (citing 28 U.S.C. § 2254(b)(2)).

[25] *Id.* at 12–50.

[26] *Id.* at 20–24.

defense.[27] Moreover, the Magistrate Judge noted that in his statement to the police, which was played at trial, Petitioner admitted to the following: (1) he was "on a mission" when he grabbed a gun and made a plan to go to the bar to seek out his wife; (2) he formed a plan to take his aunt's car and drive to the bar to confront his wife; (3) he knew he should not have grabbed his gun or shot his wife; and (4) he shot his wife because he was provoked by her presence at the bar and her prior actions.[28] The Magistrate Judge determined that this statement showed that Petitioner was capable of appreciating the nature and wrongfulness of his conduct, and so Petitioner had not established a reasonable basis on which his trial counsel might have pursued an insanity defense or appointment of a sanity commission.[29] Therefore, the Magistrate Judge determined that the state courts' rejection of this claim was neither contrary to, nor an unreasonable application, of federal law.[30]

Second, the Magistrate Judge addressed Petitioner's claim that his counsel was not prepared for trial and failed to call defense witnesses.[31] The Magistrate Judge noted that Petitioner had offered no proof to support his assertion that because his attorneys were indigent defenders they had insufficient time and resources to defend the case.[32] Moreover, the Magistrate Judge noted that Plaintiff had not identified any potential witnesses who could have provided relevant testimony to support any defense.[33] Regarding Petitioner's assertion that he should have been

---

[27] *Id.* at 21.

[28] *Id.* at 22.

[29] *Id.* at 23.

[30] *Id.* at 23–24.

[31] *Id.* at 24–30.

[32] *Id.* at 24.

[33] *Id.* at 26.

allowed to testify on his own behalf, the Magistrate Judge determined that Petitioner's assertion that his counsel advised against testifying was insufficient to show that counsel actually prevented him from testifying at trial.[34] Furthermore, the Magistrate Judge found Petitioner had not established that counsel performed unreasonably by advising Petitioner not to testify.[35] Therefore, the Magistrate Judge determined that the state courts' rejection of this claim was neither contrary to, nor an unreasonable application of, federal law.[36]

Third, the Magistrate Judge addressed Petitioner's claim that his counsel performed deficiently by failing to advise the state trial court in the motion to continue trial due to counsel's heavy caseload and insufficient time to prepare for trial.[37] The Magistrate Judge found this argument unavailing because Petitioner had not shown that his attorneys had insufficient time to defend the case.[38] Furthermore, the Magistrate Judge noted that counsel's choice of arguments in support of a motion to continue falls squarely within the ambit of trial strategy.[39] Therefore, the Magistrate Judge determined that the state courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, federal law.[40]

Fourth, the Magistrate Judge addressed Petitioner's claim that his counsel was forced to abandon questioning during voir dire because they were "too inexperienced" to continue the

---

[34] *Id.* at 29.

[35] *Id.*

[36] *Id.* at 30.

[37] *Id.* at 30–31.

[38] *Id.* at 30.

[39] *Id.* at 31.

[40] *Id.*

questioning without provoking objections from the prosecutor.[41] The Magistrate Judge noted that the state trial court granted two objections made by the prosecutor to questions posed by his counsel during voir dire, but determined that the fact that the state trial court granted the objections did not mean that defense counsel was inexperienced or ineffective.[42] Moreover, the Magistrate Judge found that a review of the trial transcript indicated that Petitioner's counsel conducted full and relevant voir dire.[43] Furthermore, the Magistrate Judge noted that "counsel's choice of voir dire questions and the scope and length of voir dire examination was well within the ambit of reasonable trial strategy for which counsel is entitled to deference."[44] Therefore, the Magistrate Judge determined that the state courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, federal law.[45]

Fifth, the Magistrate Judge addressed Petitioner's claim that his lead defense counsel had a conflict of interest during trial but continued to represent Petitioner after the trial court denied counsel's request to withdraw and for a mistrial based on the conflict.[46] Specifically, Petitioner alleged that his counsel received information via text message that his best friend was acquainted with the victim and several of the State's witnesses, but the state trial court denied counsel's request to withdraw.[47] The Magistrate Judge found that Petitioner had "failed to identify any act adverse to the defense by his counsel related to the tenuous and tangential relationship, if any,

---

[41] *Id.* at 31–34.

[42] *Id.* at 31.

[43] *Id.* 32–34.

[44] *Id.* at 33–34.

[45] *Id.* at 34.

[46] *Id.* at 34–36.

[47] *Id.* at 34.

between his counsel, the friend and the victims and witnesses."[48] Moreover, even if a conflict might have existed under the circumstances, the Magistrate Judge determined that Petitioner had not established that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having a just result."[49] Accordingly, the Magistrate Judge determined that the state courts' determination that neither deficient performance nor prejudice were established was not an unreasonable application of federal law.[50]

## 2. Ineffective Assistance of Appellate Counsel Claims

Next, the Magistrate Judge addressed Petitioner's ineffective assistance of appellate counsel claims.[51] The Magistrate Judge noted that the petition lists without discussion or explanation fourteen alleged trial errors that Petitioner asserted should have been raised on direct appeal.[52] The Magistrate Judge noted that the record did not demonstrate any reason for Petitioner's counsel or the state trial court should pursue the sanity defense based on the facts of this case, and Petitioner had not shown that the state trial court to have replaced trial counsel based on the tenuous conflict disclosed by counsel.[53] With respect to the sufficiency of the evidence claim, the Magistrate Judge noted that although counsel did not raise such a claim on direct appeal, it was raised by Petitioner himself and found to be meritless.[54] The Magistrate Judge found that the remaining arguments listed by Petitioner were "too conclusory to assess any merit that could

---

[48] *Id.* at 35.

[49] *Id.* at 36 (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

[50] *Id.*

[51] *Id.* at 37–42.

[52] *Id.* at 38–39.

[53] *Id.* at 39.

[54] *Id.*

have been argued to the state appellate court."[55] Specifically, the Magistrate Judge noted that Petitioner did not address any particular Confrontation Clause issue that would have been meritorious, as the only reference made by Petitioner was the introduction of 911 telephone calls at trial, which the Magistrate Judge determined were nontestimonial statements that do not implicate the Confrontation Clause.[56] The Magistrate Judge also found that, even assuming the testimony constituted hearsay, deciding whether to raise objections is a matter of trial strategy.[57] Furthermore, the Magistrate Judge determined that Petitioner had not established any legal basis for Petitioner's appellate counsel to have challenged Louisiana's non-unanimous verdict rule, which is a well-established law previously upheld by the United States Supreme Court.[58] Accordingly, the Magistrate Judge concluded that the state courts' denial of relief on Petitioner's ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of, federal law.[59]

### 3. Prosecutorial Misconduct Claim

Next, the Magistrate Judge addressed Petitioner's claim that the prosecutor violated his due process rights during rebuttal argument.[60] Specifically, Petitioner argued that the prosecutor attempted to garner sympathy for abused women by improperly "highlighting the plight of abused women" and describing the victim as "a young woman who had fought for years now to get out

---

[55] *Id.* at 40.

[56] *Id.* (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

[57] *Id.*

[58] *Id.* at 41 (citing *Apodaca v. Oregon*, 406 U.S. 404 (1972); *Johnson v. Louisiana*, 406 U.S. 356 (1972)).

[59] *Id.* at 42.

[60] *Id.* at 42–47.

from underneath his control."[61] However, the Magistrate Judge noted that Petitioner's trial counsel's objections to these statements were sustained by the state trial court.[62] The Magistrate Judge found that a review of the transcript of the closing and rebuttal arguments reflected that the prosecutor relied on Petitioner's statement to the police and actions tending to show that he planned the shooting to support the argument that a second-degree murder, rather than manslaughter, conviction was warranted.[63] Therefore, the Magistrate Judge concluded that the prosecutor's improper references to domestic violence did not "so infect[] the trial as a whole that it was rendered fundamentally unfair."[64] Accordingly, the Magistrate Judge determined that Petitioner had not established that the State's rebuttal argument denied him due process, and so the state courts' rejection of this claim was not contrary to, nor an unreasonable application of, federal law.[65]

### 4.     Due Process Claim

Finally, the Magistrate Judge addressed Petitioner's claim that his due process rights were violated when the state trial court removed a seated juror over defense counsel's objection.[66] Specifically, Petitioner argued that a juror advised the state trial court that he remembered Petitioner from high school, and after an inquiry in chambers regarding the juror's ability to be fair and impartial, the court dismissed him from the jury.[67] The Magistrate Judge determined that

---

[61] *Id.* at 44.

[62] *Id.*

[63] *Id.*

[64] *Id.* at 45.

[65] *Id.* at 46–47.

[66] *Id.* at 47–49.

[67] *Id.* at 47.

Petitioner had not established that "the jury which actually presided over his case was other than impartial or that the release of a single juror after the start of trial in any way affected the remaining jurors' fairness and impartiality."[68] Thus, the Magistrate Judge determined that the state courts' rejection of the claim was neither contrary to, nor an unreasonable application of, federal law.[69]

## II. Objections

### A.    *Petitioner's Objections*

Petitioner objects to the Magistrate Judge's Report and Recommendation.[70] Petitioner contends that "[t]he Orleans Public Defender's Office is and has been in crisis for decades," but despite the extensive motion to continue trial "filed by the recently appointed members of that office" the Magistrate Judge determined that Petitioner alleged without detail that his attorneys were not prepared for trial.[71] Petitioner asserts that he adequately pled his ineffective assistance of counsel claims in state court, particularly his ineffective assistance of appellate counsel claim.[72] Moreover, Petitioner argues that "when it is demonstrated that appellate counsel abandoned issues that were clearly stronger than the issues counsel pursued on direct appeal, the ineffectiveness of appellate counsel is established."[73] Petitioner contends that his claim that Louisiana's non-unanimous verdict rule is unconstitutional must be addressed because "[i]f advocates hued to the circular reasoning advanced in the Magistrate report, the law would never make any progress,

---

[68] *Id.* at 49.

[69] *Id.*

[70] Rec. Doc. 22.

[71] *Id.* at 2.

[72] *Id.*

[73] *Id.* at 2–3 (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

segregation would have remained the law of the land, absent legislative action, because 'the issue has been settled.'"[74]

Next, Petitioner asserts that "[w]hen a citizen pleads ineffective assistance of counsel, in a case in which their newly appointed lawyers filed pleadings which stated they were not competent to provide adequate counsel, due to insufficient time to prepare, the law requires that the State be ordered to answer and in due course an evidentiary hearing conducted."[75] Petitioner contends that he does not have evidence to support his claim that his counsel was not prepared for trial because the state trial court did not conduct an evidentiary hearing.[76] Petitioner argues that "if the door were opened and members of the Orleans Public Defender's Office were allowed to make the record regarding their constitutional ineffectiveness, virtually every conviction would be subject to challenge."[77]

Finally, Petitioner argues that the prosecutor "repeatedly interjected facts that were not in evidence and a call to be the voice of the victim" in her closing arguments.[78] Petitioner asserts that the prosecutor's statement that he had time for his "blood to cool" is contradicted by the evidence which established "an unbroken chain of events."[79] Specifically, Petitioner contends that "[h]e found the semen stained underwear, got his gun, got his car and drove to the bar where his wife drank til dawn every night and shot her."[80] Petitioner notes that he turned himself in to the police

---

[74] *Id.* at 4.

[75] *Id.* at 4–5.

[76] *Id.* at 5.

[77] *Id.*

[78] *Id.* at 6.

[79] *Id.*

[80] *Id.*

and admitted his crime.[81] Petitioner contends that he is not asserting that but for the prosecutor's "improper, inflammatory rebuttal closing argument" he would not have been convicted.[82] Instead he contends that "given the overall context of the manner in which this case was forced to trial with attorneys that were not prepared, that the improper argument resulted in a conviction for Second Degree Murder and not for Manslaughter."[83]

In support of his objections to the Report and Recommendation, Petitioner presents the motion to continue trial that was filed in his case,[84] the transcript of his counsel's request to withdraw from the case,[85] an article regarding budget shortfalls at the Orleans Public Defender's Office,[86] and an article titled "The New Standard."[87] Petitioner also presents an affidavit of one of his trial attorneys, Andrew Duffy, dated December 8, 2015.[88] In the affidavit, Duffy states that he was a full-time staff attorney at the Orleans Public Defenders Office from May 2006 until July 2010.[89] Duffy attests that "[a]t the time he was assigned to represent Mr. Parker, he carried a burdensome caseload of more than 40 cases, all of which carried a mandatory life sentence or its equivalent in years . . . [and] supervised five other felony level attorneys."[90] Duffy further attests that in February 2010 he was assigned to represent Petitioner when Petitioner's originally assigned

---

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] Rec. Doc. 23-1.

[85] Rec. Doc. 23-2.

[86] Rec. Doc. 23-3.

[87] Rec. Doc. 23-4.

[88] Rec. Doc. 25-1.

[89] *Id.* at 1.

[90] *Id.*

attorney left the Orleans Public Defenders Office on maternity leave.[91] Duffy states that upon his receipt of the case file, "there were no psychiatric records, medical records or funds to secure an expert," and an expert had not been engaged to examine Petitioner and report on a potential insanity defense.[92] Moreover, Duffy attests that in the days leading up to trial Elizabeth Coe, another attorney who was assigned to sit as second chair on the case, discovered a box of files in Petitioner's former attorney's office, which contained documents relevant to the defense.[93] Duffy states that approximately one week before trial he filed a motion to continue because "he had only met [Petitioner] approximately two months prior and there was insufficient time to prepare the case given his other assigned cases."[94] Finally, Duffy attests that during the trial he received a text message from his close personal friend, Jason Sedawie, which indicated that Sedawie worked with many of the prosecution witnesses and knew the victims in the case.[95]

**B.    *State's Response***

The State of Louisiana did not file a brief in opposition to Petitioner's objections despite receiving electronic notice of the filing.

### III. Standard of Review

**A.    *Review of the Magistrate Judge's Report and Recommendation***

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. The District Judge "may accept, reject, or modify the

---

[91] *Id.*

[92] *Id.*

[93] *Id.* at 2.

[94] *Id.*

[95] *Id.*

recommended disposition" of a Magistrate Judge on a dispositive matter.[96] The District Judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[97] The District Court's review is limited to plain error for parts of the report which are not properly objected to.[98]

## B.    Standard of Review Under the AEDPA

Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the standard of review used to evaluate issues presented in habeas corpus petitions was revised "to ensure that state-court convictions are given effect to the extent possible under law."[99] For questions of fact, federal courts must defer to a state court's findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[100] A state court's determinations on mixed questions of law and fact or pure issues of law, on the other hand, are to be upheld unless they are "contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[101]

Regarding this standard, the U.S. Court of Appeals for the Fifth Circuit further explains:

A state-court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from

---

[96] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[97] Fed. R. Civ. P. 72(b)(3).

[98] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[99] *Bell v. Cone*, 535 U.S. 685, 693 (2002).

[100] 28 U.S.C. § 2254(d)(2).

[101] 28 U.S.C. § 2254(d)(1).

Supreme Court precedent. A state-court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.[102]

If Supreme Court case law "give[s] no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonably applied clearly established Federal law.'"[103] Additionally, "unreasonable is not the same as erroneous or incorrect; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."[104]

However, the AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts.[105] Instead, claims that were not adjudicated on the merits by the state courts are reviewed "*de novo* without applying AEDPA-mandated deference."[106]

## IV. Law and Analysis

### A.   *Ineffective Assistance of Trial Counsel Claims*

Petitioner claims that he was denied effective assistance of trial counsel when: (1) counsel allowed the trial court to proceed without appointment of a sanity commission, failed to pursue the competency defense asserted by Petitioner's original appointed trial counsel and convinced Petitioner on the morning of trial to withdraw the insanity plea because counsel was unprepared for trial; (2) counsel was not prepared for trial and rested the defense case without calling witnesses and without allowing Petitioner to testify on his own behalf, because they did not have time to

---

[102] *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (citations and quotation marks omitted).

[103] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

[104] *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (quotation marks omitted).

[105] *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).

[106] *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009) (citing *Henderson*, 333 F.3d at 597).

prepare Petitioner or any defense witnesses; (3) counsel did not advise the trial court in the motion to continue trial about their heavy caseload and insufficient time to prepare; (4) counsel abandoned voir dire because they were too inexperienced to proceed without raising objections by the prosecutor; and (5) counsel learned of a conflict of interest during trial but continued to represent Petitioner after the trial court denied counsel's request to withdraw and for mistrial.[107] The Magistrate Judge found each of these arguments unavailing, concluding that Petitioner's claims of ineffective assistance of counsel are meritless and that the state courts' denial of relief on these claims is not contrary to, or an unreasonable application of, federal law.[108] Petitioner objects to this determination, arguing "[t]he Orleans Public Defender's Office is and has been in crisis for decades," but despite the extensive motion to continue trial "filed by the recently appointed members of that office" the Magistrate Judge determined that Petitioner alleged without detail that his attorneys were not prepared for trial.[109] Accordingly, the Court reviews these issues *de novo*.[110]

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.[111] If a court finds that a petitioner fails on either of these two prongs it may dispose of the ineffective assistance claim without addressing the other prong.[112] To satisfy the deficient performance prong, a petitioner must overcome a strong presumption that the counsel's conduct

---

[107] Rec. Doc. 1-2 at 5–13, 16–17. *See also* Rec. Doc. 19 at 9–10. The Magistrate Judge discerned these claims from the petition, and Petitioner does not object to this categorization of the claims.

[108] Rec. Doc. 19 at 20–37.

[109] Rec. Doc. 22 at 2.

[110] Fed. R. Civ. P. 72(b)(3).

[111] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

[112] *Id.* at 697.

falls within a wide range of reasonable representation.[113] Petitioner must show that the conduct was so egregious that it failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[114] Courts addressing this prong of the test for ineffective counsel must consider the reasonableness of counsel's actions in light of all the circumstances.[115] To prevail on the actual prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[116] A reasonable probability is "a probability sufficient to undermine confidence in the outcome."[117]

In considering Petitioner's claims on federal habeas corpus review that are repetitive of claims already made to a state court, the central question "is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether [it] was unreasonable— a substantially higher threshold."[118] In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."[119] Thus, this standard is considered "doubly deferential" on habeas corpus review.[120]

---

[113] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

[114] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).

[115] *See Strickland*, 466 U.S. at 689.

[116] *Id*. at 694.

[117] *Id*.

[118] *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).

[119] *Id*.

[120] *Id*.

As an initial matter, the Court notes Petitioner presents an affidavit of one of his trial attorneys, Andrew Duffy, dated December 8, 2015, for the first time in his objections to the Magistrate Judge's Report and Recommendation, in support of his ineffective assistance of counsel claim.[121] In *Cullen v. Pinholster*, the Supreme Court explained that, because Section 2254(d)(1) "refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law[,] [t]his backward-looking language requires an examination of the state-court decision at the time it was made."[122] Thus, "the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court."[123] Moreover, the Fifth Circuit has recognized that "[t]he same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2)."[124] Therefore, "*Pinholster* prohibits a federal court from using evidence that is introduced for the first time [on federal habeas review] as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d)."[125] Accordingly, the Court may not consider the affidavit in determining whether the state courts' denial of relief on Petitioner's ineffective assistance of trial counsel claims was contrary to, or an unreasonable application of, federal law.[126]

---

[121] Rec. Doc. 25-1.

[122] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting 28 U.S.C. § 2254(d)(1)).

[123] *Id.*

[124] *See Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).

[125] *Id.*

[126] As the Magistrate Judge noted in the Report and Recommendation, it is difficult to discern for the state court pleadings whether Petitioner did in fact exhaust state court remedies as to each aspect of his ineffective assistance of trial counsel claims, but "any such conclusion cannot be made with confidence, given the confusing morass presented by the state court pleadings submitted by defense counsel." Rec. Doc. 19 at 12. To the extent that any of these claims were not exhausted before the state courts, Petitioner would be procedurally barred from raising these claims. "[P]rocedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now

### 1. Failure to Pursue Insanity Defense

Petitioner claims that his trial counsel was ineffective when he allowed the trial court to proceed with the case without appointment of a sanity commission, failed to pursue the insanity defense raised by Petitioner's prior counsel, and advised Petitioner to withdraw the insanity plea on the morning of trial.[127] The Fifth Circuit considered a similar claim in *Johnson v. Cain*.[128] There, the Fifth Circuit found "no evidence in the record that counsel was on notice that Johnson suffered from a physical or psychological condition that would have made the insanity defense viable."[129] The court noted that under Louisiana law "[a] defendant who raises the insanity defense 'must persuade the jury that he had a mental disease or defect which rendered him incapable of distinguishing right from wrong with reference to the conduct which forms the basis for the criminal charge against him.'"[130] The Fifth Circuit determined that the petitioner's confession overwhelmingly established that he was not incapable of distinguishing right from wrong with regard to the murder, because he admitted to positioning the body so that it would not be seen, discarding evidence, and lying to family as to his whereabouts.[131] Therefore, the Fifth Circuit

---

find the claims procedurally barred." *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (quoting *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997); *Elizalde v. Dretke*, 362 F.3d 323, 328–29 (5th Cir. 2004)). A federal habeas court "may resurrect a defaulted claim, and consider its merits, if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (quotation marks omitted)). Here, Petitioner has presented no argument regarding cause for the default. Moreover, he has not alleged that the failure to consider the claims would result in a fundamental miscarriage of justice. Therefore, Petitioner would be procedurally barred from raising any ineffective assistance of trial counsel claims that were not properly exhausted before the state courts.

[127] Rec. Doc. 1-2 at 5–6, 9–10.

[128] 548 F. App'x 260, 261 (5th Cir. 2013).

[129] *Id.*

[130] *Id.* (citing *State v. Allen*, 2011-CA-1995, 2012 WL 2061472, at *6 (La. Ct. App. 2012)).

[131] *Id.* at 261–62.

concluded that the petitioner had not established prejudice, because he "failed to show that an investigation by counsel into the mere possibility that he suffered from PTSD or TBI would have caused him to forgo the plea offer and insist upon a capital trial."[132]

Here, even if the Court could consider Duffy's affidavit, which states that at the time Duffy was appointed to the case there were no psychiatric records, medical records or funds to secure an expert, and an expert had not been engaged to examine Petitioner and report on a potential insanity defense,[133] Petitioner would not be entitled to relief on this claim. Petitioner has not identified any basis upon which his attorneys could have pursued an insanity defense. Moreover, in his statement to the police, which was played at trial, Petitioner admitted that he was "on a mission" when he grabbed a gun and made a plan to go to the bar to seek out his wife.[134] Petitioner also admitted to forming a plan to take his aunt's car and drive to the bar to confront his wife, and that he knew he should not have grabbed his gun or shot his wife.[135] Petitioner also stated that he was 'provoked by many things, including what he termed [his wife] playing with his head, smiling with men, and coming home late."[136] Petitioner's statement to the police indicates that Petitioner was capable of distinguishing right from wrong with reference to the murder. Therefore, Petitioner has not shown a reasonable basis on which his trial counsel might have pursued an insanity defense or appointment of a sanity commission. Accordingly, the state courts' rejection of this claim was neither contrary to, nor an unreasonable application of, federal law.

---

[132] *Id.*

[133] Rec. Doc. 25-1 at 1.

[134] *Parker*, 76 So. 3d at 61.

[135] *Id.*

[136] *Id.* (quotation marks omitted).

## 2. Failure to Adequately Prepare for Trial and Call Witnesses

Petitioner claims that his counsel performed ineffectively by failing to adequately prepare for trial, failing to call defense witnesses, and failing to allow Petitioner to testify on his own behalf.[137] For the first time in his objections to the Report and Recommendation, Petitioner presents Duffy's affidavit, which states that he had "insufficient time to prepare the case given his other assigned cases."[138] Even if the Court could consider this affidavit, which was not presented to the state courts, it does not establish that Petitioner is entitled to relief on this claim. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[139] The Fifth Circuit has recognized that "[a] petitioner cannot show prejudice with respect to a claim that counsel failed to investigate and present mitigating evidence without adducing what the investigation would have shown."[140] Petitioner presents no evidence of what an investigation would have revealed or how it would have affected the outcome of his trial. Therefore, Petitioner has not demonstrated that he is entitled to relief on this claim.

Petitioner's claim that his counsel failed to call defense witnesses fails for this same reason. As the Fifth Circuit has recognized, "[c]laims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain."[141] To prevail on such a claim, a petitioner must show prejudice "by naming the witness, demonstrating that the

---

[137] Rec. Doc. 1-2 at 16–217.

[138] Rec. Doc. 25-1 at 2.

[139] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998).

[140] *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696).

[141] *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense."[142] Petitioner has failed to name any potential witnesses, demonstrate that the witnesses were available and would have testified, or set out the content of their proposed testimony. Therefore, Petitioner has not demonstrated that he was prejudiced by his attorneys' failure to call witnesses.

Petitioner also asserts that he should have been allowed to testify on his own behalf at trial. A defendant has a fundamental constitutional right to testify at trial.[143] "A waiver of this right must be knowing and voluntary, and it must be made by the defendant rather than his counsel."[144] The Fifth Circuit has held that "when a defendant contends that trial counsel interfered with his right to testify, 'the appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'"[145] However, "a violation of this right only occurred if the 'final decision that [defendant] would not testify was made against his will.'"[146] Petitioner claims that he told his counsel he wanted to testify, but his counsel advised against it because there was insufficient time to prepare. Petitioner's assertion that his counsel advised against his testimony is insufficient to show that counsel actually prevented him from testifying at trial. Furthermore, Petitioner has not established that counsel's advice that Petitioner not testify was unreasonable. Therefore, Petitioner has not

---

[142] *Id.* (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

[143] *Roddy v. Vannoy*, 671 F. App'x 295, 296 (5th Cir. 2016) (citing *Rock v. Arkansas*, 483 U.S. at 44, 49–52 (1987)).

[144] *Id.* (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1998)).

[145] *Id.* (quoting *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002)).

[146] *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir.1990)).

demonstrated that he is entitled to relief on this claim, as the state courts' rejection of this claim was neither contrary to, nor an unreasonable application of, federal law.

### 3.    Failure to Advise the Trial Court of Counsel's Insufficient Time to Prepare in the Motion to Continue Trial

Petitioner claims that his counsel performed deficiently by failing to advise the state trial court in the motion to continue trial about their heavy caseload and insufficient time to prepare for trial.[147] As the Fifth Circuit has recognized, the decision on whether or not to seek a continuance is a matter of trial strategy, and federal courts "will not question a counsel's reasonable strategic decisions."[148] Furthermore, "the failure to present a particular line of argument or evidence is presumed to have been the result of strategic choice."[149] Petitioner has not demonstrated that his counsel's strategic choice regarding the arguments presented in the motion to continue constituted deficient performance. Accordingly, the state courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, federal law.

### 4.    Failure to Pursue Questions During Voir Dire

Petitioner claims that his counsel was forced to abandon questioning during voir dire because they were too inexperienced to continue the questioning without provoking objections from the prosecutor.[150] In support of this claim, Petitioner references two instances where the state trial court sustained objections by the prosecutor to questions posed by defense counsel during voir dire concerning whether the jurors automatically would consider a shooting to be murder.[151]

---

[147] Rec. Doc. 1-2 at 8.

[148] *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007).

[149] *Taylor v. Maggio*, 727 F.2d 341, 347–48 (5th Cir. 1984).

[150] Rec. Doc. 1-2 at 11–12.

[151] *Id.*

As the Fifth Circuit has recognized, an "attorney's actions during voir dire are considered to be a matter of trial strategy."[152] "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'"[153] Petitioner has not demonstrated that his counsel performed deficiently during voir dire. A review of the trial transcript indicates that Petitioner's counsel conducted full and relevant voir dire. The fact that the state trial court sustained the prosecutor's objections does not show that counsel's performance was deficient. Moreover, Petitioner has not demonstrated that he was prejudiced by his counsel's performance during voir dire. As the Louisiana Fourth Circuit noted on direct appeal, "[a] full reading of the voir dire transcript shows that although the trial court sustained the State's objections, defense counsel was able to question the prospective jurors earlier concerning their ability to consider the shooting to be a manslaughter."[154] Therefore, Petitioner has not established that his counsel performed deficiently during voir dire or that his counsel's performance prejudiced his defense. Accordingly, the state courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, federal law.

### 5.   Conflict of Interest

Finally, Petitioner claims that his lead defense counsel had a conflict of interest during trial but continued to represent Petitioner after the trial court denied counsel's request to withdraw and for a mistrial based on the conflict.[155] For the first time in his objections to the Report and

---

[152] *Seigfried v. Greer*, 372 F. App'x 536, 540 (5th Cir. 2010) (quoting *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir.1995)).

[153] *Teague*, 60 F.3d at 1172 (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

[154] *Parker*, 76 So. 3d at 63.

[155] Rec. Doc. 1-2 at 12–13.

Recommendation, Petitioner presents Duffy's affidavit, which states that during the trial Duffy received a text message from his close personal friend, Jason Sedawie, which indicated that Sedawie worked with many of the prosecution witnesses and knew the victims in the case.[156] Even if the Court could consider this affidavit, which was not presented to the state courts, it does not establish that Petitioner is entitled to relief on this claim.

In *Cuyler v. Sullivan*, the Supreme Court held that prejudice is presumed when counsel is burdened with an actual conflict of interest "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"[157] In *Beets v. Scott*, the Fifth Circuit determined that the Supreme Court's holding in *Cuyler* is "limited [] to actual conflicts resulting from a lawyer's representation of multiple criminal defendants."[158] The Fifth Circuit explained that "*Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context."[159] "*Strickland* more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client."[160]

---

[156] Rec. Doc. 25-1 at 2.

[157] *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980)).

[158] *Hernandez v. Johnson*, 108 F.3d 554, 559 (5th Cir. 1997) (citing *Beets v. Scott*, 65 F.3d 1258, 1266 (5th Cir. 1995) (en banc)).

[159] *Beets*, 65 F.3d at 1265.

[160] *Id.* at 1260.

When a personal conflict of interest is alleged, the pertinent inquiry is whether Petitioner has demonstrated that his "attorney's performance fell below an objective standard of reasonableness and that it prejudiced the defense, undermining the reliability of the proceeding."[161] Here, Petitioner alleges a personal conflict existed because Duffy's friend knew the victims. However, Petitioner has not demonstrated that he was prejudiced by his attorney's conduct or that the alleged conflict compromised the quality of defense counsel's representation.

Petitioner claims that his counsel's performance after the conflict was announced was "spotty and lackluster at best."[162] To support this assertion, Petitioner lists instances in which his counsel's objections were sustained by the trial court but counsel did not move for a mistrial.[163] However, Petitioner does not explain why a motion for a mistrial would have been warranted. Petitioner also points to instances when he contends that his counsel should have objected to hearsay testimony,[164] but he does not explain what specific testimony counsel should have objected to. Therefore, Petitioner has not established that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having a just result."[165] Accordingly, the state courts' determination that neither deficient performance nor prejudice were established was not contrary to, or an unreasonable application of, federal law.

---

[161] *Id.* at 1272-73. The "presumed prejudice standard" does not extend beyond cases involving multiple representation, and thus, is inapplicable in this case. *Id.* at 1265.

[162] Rec. Doc. 1-2 at 13.

[163] *Id.*

[164] *Id.* at 13–14.

[165] *Strickland*, 466 U.S. at 686.

## B.    *Ineffective Assistance of Appellate Counsel Claim*

As part of his ineffective assistance of appellate counsel claim, Petitioner argues that his appellate counsel failed to preserve objections to the following errors on direct appeal: (1) the state trial court did not appoint a sanity commission; (2) the state trial court denied the motion to continue trial; (3) trial counsel improperly withdrew the insanity plea; (4) the trial court denied the motion to withdraw and for mistrial after counsel announced his conflict of interest; (5) the trial court refused to grant a mistrial after Petitioner announced he had a problem with counsel's conflict; (6) there were Sixth Amendment Confrontation Clause violations at trial; (7) there was a Sixth Amendment Confrontation Clause violation when 911 tapes were played and admitted at trial; (8) the trial court failed to administer the trial in accordance with law; (9) the trial court unlawfully removed a seated juror; (10) the prosecutor made improper and inflammatory closing arguments; (11) Petitioner's sentences were illegal; (12) there was insufficient evidence to support the conviction; (13) cumulative errors rendered the verdicts a Due Process violation; and (14) Louisiana's non-unanimous verdict rule was unconstitutional.[166]

The Magistrate Judge found Petitioner's ineffective assistance of appellate counsel claims unavailing.[167] Petitioner objects to the Magistrate Judge's recommendation, asserting that he adequately pled his ineffective assistance of appellate counsel claims.[168] Petitioner argues that "when it is demonstrated that appellate counsel abandoned issues that were clearly stronger than the issues counsel pursued on direct appeal, the ineffectiveness of appellate counsel is

---

[166] Rec. Doc. 1-2 at 22–23.

[167] Rec. Doc. 19 at 37–42.

[168] Rec. Doc. 22 at 2.

established."[169] Petitioner contends that his claim that Louisiana's non-unanimous verdict rule is unconstitutional must be addressed because "[i]f advocates hued to the circular reasoning advanced in the Magistrate report, the law would never make any progress, segregation would have remained the law of the land, absent legislative action, because 'the issue has been settled.'"[170]

To prevail on a claim that appellate counsel was ineffective, a petitioner must show that appellate counsel unreasonably failed to discover and assert a non-frivolous issue and establish a reasonable probability that he would have prevailed on this issue but for his counsel's deficient representation.[171] However, appellate counsel are not required to assert every non-frivolous issue to be found effective.[172] Rather, appellate counsel is entitled to legitimately select among non-frivolous claims based on his or her professional judgement as a means by which to increase the client's likelihood of success.[173] Furthermore, appellate counsel even has the discretion to exclude non-frivolous issues if they reasonably determine that the issue is unlikely to prevail.[174]

The only specific objection that Petitioner raises regarding his ineffective assistance of appellate counsel claim is that his claim that Louisiana's non-unanimous verdict rule is unconstitutional must be addressed. Moreover, Petitioner contends that he has established ineffective assistance of counsel because the claims raised on direct appeal were weaker than the claims he contends his counsel should have pursued. In support of this assertion, Petitioner cites

---

[169] *Id.* at 2–3 (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

[170] *Id.* at 4.

[171] *Briseno v. Cockrell*, 274 F.3d 204, 207 (2001); *Smith v. Robbins,* 528 U.S. 259, 285–86 (2000).

[172] *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998).

[173] *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).

[174] *Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006).

*Smith v. Robbins*, where the Supreme Court recognized that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."[175] However, Petitioner presents no argument as to how the claims he contends appellate counsel should have raised were meritorious. Therefore, Petitioner has not demonstrated that his appellate counsel's decision not to raise these issues on appeal was objectively unreasonable or that, but for the failure to raise the issue, the result of the proceeding would have been different. Accordingly, the state courts' denial of relief on Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, Supreme Court law.

## C.    *Prosecutorial Misconduct Claim*

The Magistrate Judge found that Petitioner was not entitled to relief on his claim that the prosecutor violated his due process rights during rebuttal argument.[176] Petitioner objects to this determination, arguing that the prosecutor "repeatedly interjected facts that were not in evidence and a call to be the voice of the victim" in her closing arguments.[177] Petitioner also asserts that the prosecutor's statement that he had time for his "blood to cool" is contradicted by the evidence which established "an unbroken chain of events."[178] Specifically, Petitioner contends that "[h]e found the semen stained underwear, got his gun, got his car and drove to the bar where his wife drank til dawn every night and shot her."[179] Petitioner argues that he is not asserting that but for the prosecutor's "improper, inflammatory rebuttal closing argument" he would not have been

---

[175] 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

[176] Rec. Doc. 19 at 42–47.

[177] Rec. Doc. 22 at 6.

[178] *Id.*

[179] *Id.*

convicted, but instead that the closing argument resulted in a conviction for second degree murder rather than manslaughter.[180] Accordingly, the Court reviews this claim *de novo*.[181]

In *Jones v. Butler*, the Fifth Circuit explained that "improper jury argument by the state does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment."[182] "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."[183] The Fifth Circuit instructs that courts should apply a two-step analysis when reviewing claims of prosecutorial misconduct.[184] First, the Court must determine whether the prosecutor made an improper remark.[185] "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant."[186] To satisfy the second step, "the petitioner must demonstrate that the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."[187]

---

[180] *Id.*

[181] Fed. R. Civ. P. 72(b)(3).

[182] 864 F.2d 348, 356 (5th Cir. 1988).

[183] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

[184] *United States v. Wise*, 221 F.3d 140, 152 (5th Cir. 2000).

[185] *Id.*

[186] *Id.*

[187] *Jones*, 864 F.2d at 356.

Petitioner argues that the prosecutor improperly attempted to garner sympathy for abused women by improperly "highlighting the plight of abused women" and describing the victim as "a young woman who had fought for years now to get out from underneath his control."[188] Petitioner's defense counsel objected to these statements, and the state trial court sustained the objection.[189] Therefore, Petitioner has demonstrated that these remarks were improper. A review of the transcript of the closing and rebuttal arguments reflected that the prosecutor relied on Petitioner's statement to the police and actions tending to show that he planned the shooting to support the State's argument that a second-degree murder, rather than manslaughter, conviction was warranted. Therefore, Petitioner has failed to show that the misconduct was persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks.[190]

Petitioner also contends that the prosecutor's statement that he had time for his "blood to cool" is contradicted by the evidence which established "an unbroken chain of events," which he asserts supports his argument that the jury should have convicted him of manslaughter rather than murder.[191] However, Petitioner has not shown that this statement was improper or conflicted with the evidence. As discussed *supra*, in his statement to the police, which was played at trial, Petitioner admitted that he was "on a mission" when he grabbed a gun and made a plan to go to the bar to seek out his wife.[192] Petitioner also admitted to forming a plan to take his aunt's car and drive to the bar to confront his wife, and that he knew he should not have grabbed his gun or shot

---

[188] Rec. Doc. 1-2 at 19.

[189] State Rec., Vol VIII of X, Trial Transcript at 160, Apr. 8, 2010.

[190] *Jones*, 864 F.2d at 356.

[191] Rec. Doc. 22 at 8.

[192] *Parker*, 76 So. 3d at 61.

his wife.[193] These statements indicate that Petitioner had time to form a plan to murder his wife, supporting the prosecutor's argument that a second-degree murder conviction was warranted. Accordingly, Petitioner had not established that the prosecutor's closing arguments denied him due process. Therefore, the state courts' rejection of this claim was not contrary to, nor an unreasonable application of, federal law.[194]

### D.      Due Process Claim

The Magistrate Judge found that Petitioner is not entitled to relief on the claim that his due process rights were violated when the state trial court removed a seated juror over defense counsel's objection.[195] Specifically, Petitioner argued that a juror advised the state trial court that he remembered Petitioner from high school, and after an inquiry in chambers regarding the juror's ability to be fair and impartial, the court dismissed him from the jury.[196] The Magistrate Judge determined that Petitioner had not established that "the jury which actually presided over his case was other than impartial or that the release of a single juror after the start of trial in any way affected the remaining jurors' fairness and impartiality."[197] Petitioner does not object to this determination. Therefore, reviewing for plain error,[198] and finding none, the Court adopts the Magistrate Judge's determination that the state courts' rejection of the claim was neither contrary to, nor an unreasonable application of, federal law.

---

[193] Id.

[194] Id. at 46–47.

[195] Rec. Doc. 19 at 47–49.

[196] Id. at 47.

[197] Id. at 49.

[198] See Douglass, 79 F.3d at 1428–29.

## V. Conclusion

For the reasons stated above, Petitioner has not shown that the state courts' denial of relief on his claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's objections are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation and Petitioner Roy Parker's petition for issuance for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** and **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA,** this <u>12th</u> day of September, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**